In re Dibert K. YEAGLEY and Melinda R. Yeagley, Debtors.

David C. SEITTER, as Trustee for Estate of Dibert and Melinda R. Yeagley, Plaintiff,

v.

FARMER'S COMMODITIES CORPORATION, Defendant.

Bankruptcy No. 94–21919–7.
Adversary No. 95–6012.

United States Bankruptcy Court, D. Kansas.

April 17, 1998.

David C. Seitter, Jean M. Bobrink, Levy and Craig, P.C., Overland Park, KS, for Plaintiff.

Thomas E. Osborn, Holbrook, Heaven & Fay, P.A., Kansas City, KS, for Defendant.

## MEMORANDUM ON SUMMARY JUDGMENT FOR DEFENDANT [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

The Yeagleys had maintained a margin account with Farmer's Commodities Corporation, a commodity broker. When trading in the account produced a deficiency that exceeded $46,000, Farmer's made numerous "margin calls" as provided by the account contract. The Yeagleys tendered a $35,000 check; Farmer's credited the payment to the Yeagleys' account; and the Yeagleys were permitted to continue trading until their account was closed with a $60,239.31 deficiency. When the Yeagleys filed for Chapter 7 relief, their trustee, David C. Seitter, sued under 11 U.S.C. § 547(b) to avoid the payment as a preferential transfer. Farmer's Commodities Corporation, the defendant, answered and moved for summary judgment on the strength of § 546(e), a Bankruptcy Code section that excepts from § 547(b) avoidance any transfer that is a "margin payment." [2] Was the $35,000 payment a "margin payment" entitling defendant to summary judgment? Yes, Farmer's is entitled to summary judgment.

■ Summary judgment is appropriate when the record as a whole shows that no genuine issue of material fact remains and that the moving party is entitled to judgment as a matter of law. [3] For summary judgment, all material facts stated by the movant are deemed admitted, unless they are specifically controverted by the opposing party. [4]

■ Here, both the factual and legal components germane to granting summary judgment under the § 546(e) exception center on whether the contested transaction involved a "margin payment." Summary judgment provides the proper mechanism for determining the applicability of the margin payment exception. [5] When material facts establish the existence of a margin payment, no expert evidence is required. [6] Construing "margin payment" and applying § 546(e) to the facts present questions of law. [7]

The Yeagleys opened the commodity trading account with Farmer's in September 1993 to trade commodity futures, commodity straddles, or commodity options. The Yeagleys agreed to certain margin requirements on the account. When a deficiency in their account exceeded $46,000, Farmer's made numerous requests for payment or "margin calls." Eventually, the Yeagleys tendered a $35,000 check. Farmer's credited the payment to the Yeagleys' account on July 29, 1994. The Yeagleys continued to trade until their account was closed in October 1994 because it contained a $60,239.31 deficiency.

The Yeagleys filed their Chapter 7 petition in bankruptcy on October 19, 1994, less than 90 days after Farmer's receipt of the $35,000 check.

In general, margin transactions allow customers to trade with money borrowed from

---

1. Plaintiff David C. Seitter appears by his attorneys, David C. Seitter and Jean M. Bobrink of Levy and Craig, P.C., Overland Park, Kansas. Defendant Farmer's Commodities Corporation appears by its attorney, Thomas E. Osborn of Holbrook, Heaven & Fay, P.A., Kansas City, Kansas.

2. The parties stipulate in their pretrial order that the Court has jurisdiction over the parties and subject matter of the action; that venue in this district is proper; that all necessary and indispensable parties are joined; and that the Court may try this adversary proceeding to final judgment. In addition, the Court independently finds that this is a core proceeding under 28 U.S.C.

§ 157(b)(2)(F); and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D. Kan. Rule 83.8.5).

3. Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c).

4. D.Kan. LBR 7056–1.

5. *Jonas v. Resolution Trust Corp. (In re Comark),* 971 F.2d 322, 325 (9th Cir.1992).

6. *See id.* at 324.

7. *Id.* at 324–25.

their brokers. To open a margin account, the customer signs an agreement with a broker, then deposits with the broker money or securities, known as the "margin." When making trades for the margin account, the broker lends the customer the difference between the purchase price and the customer's margin deposit. The broker keeps a daily accounting of the credits and debits in the margin account. If the deficit balance falls below the margin requirements, the broker issues a "margin call"—a request to the customer to replenish the margin account.

Except for transfers involving actual fraud under § 548(a)(1), section 546(e) explicitly bars a trustee from avoiding a prepetition transfer that is a margin payment. Under the statute, the transfer must be made by or to a commodity broker, forward contract merchant, stockbroker, financial institution, or securities clearing agency:

> Notwithstanding sections 544, 545, 547, 548(a)(2), and 548(b) of this title, the trustee may not avoid a transfer that is a *margin payment,* as defined in section 101, 741, or 761 of this title, or a settlement payment, as defined in section 101 or 741 of this title, *made by or to a commodity broker, forward contract merchant, stockbroker, financial institution, or securities clearing agency,* that is made before the commencement of the case, except under section 548(a)(1) of this title.[8]

Section 546(e) refers to similar Code definitions of "margin payment" for forward contract trades, § 101(38)[9]; securities trades, § 741(5)[10]; and commodities trades,

§ 761(15). Since the alleged "margin payment" went to a commodities trading account, the definition in 11 U.S.C. § 761(15) applies here:

> "[M]argin payment" means payment or deposit of cash, a security, or other property, that is commonly known to the commodities trade as original margin, initial margin, maintenance margin, or variation margin, including mark-to-market payments, settlement payments, variation payments, daily settlement payments, and final settlement payments made as adjustments to settlement prices.

Mr. Seitter takes seemingly inconsistent positions in his suggestions in opposition to summary judgment. On one hand, he admits that a margin call was made and that the Yeagleys submitted a $35,000 check to Farmer's.[11] On the other hand, he insists that trial testimony would establish that the Yeagleys' payment was not a "margin call" under § 546(e). The only factual dispute he raises is the existence of a margin call.[12] In support, he points to affidavits in which Mr. Yeagley stated that sub-accounts were created to avoid margin calls, and in which Yeagley denied that the $35,000 payment was a "margin call." Mr. Seitter's argument against summary judgment confuses the terms "margin call" and "margin payment."

■ To qualify as a margin payment, the payment need not be made in response to the broker's specific demand for payment, known as a "margin call."[13] A margin call is not required to precede a margin payment.[14]

---

8. 11 U.S.C. § 546(e) (emphasis added).

9. Applicable to the forward contract trade, the definition in 11 U.S.C. § 101(38) provides: " '[M]argin payment' means, for purposes of the forward contract provisions of this title, payment or deposit of cash, a security or other property, that is commonly known in the forward contract trade as original margin, initial margin, maintenance margin, or variation margin, including mark-to-market payments, or variation payments."

10. Applicable to the securities trade, the definition in 11 U.S.C. § 741(5) provides: " '[M]argin payment' means payment or deposit of cash, a security, or other property, that is commonly known to the securities trade as original margin, initial margin, maintenance margin, or variation margin, or as a mark-to-market payment, or that secures an obligation of a participant in a securities clearing agency."

11. Stipulation 6.C., Final Pretrial Conference Order filed May 24, 1996, at 3, and paragraph 6, Plaintiff's Suggestions and Response to Defendant's Motion for Summary Judgment filed November 2, 1996, at 3.

12. Plaintiff's Suggestions and Response to Defendant's Motion for Summary Judgment filed November 2, 1995, at 7 *et seq.*

13. *Biggs,* 193 B.R. at 939.

14. *Biggs,* 193 B.R. at 939.

Thus, any factual issue concerning the existence of a margin call is irrelevant.

 In the context of § 546(e), the courts have construed the term "margin payment" broadly.[15] They have reflected Congress's intent to protect the commodities and securities markets from the instability caused by the reversal of settled transactions.[16] Under this broad construction, the term "margin payment" includes any payment by the debtor to reduce a deficiency in that debtor's margin account.[17] The term "margin payment" is not broad enough, however, to encompass a payment made to open a margin account before any trading is conducted or any deficiency is incurred.[18]

Mr. Seitter fails to controvert any material facts establishing a margin payment under § 546(e). The uncontroverted facts show that in September 1993, the Yeagleys opened their account with Farmer's, a commodity broker; they signed an agreement containing margin requirements; and they began trading on that account. In July 1994, the Yeagleys tendered the $35,000 check that Farmer's credited against the deficiency in their account. The Yeagleys continued to trade until their account was closed in October 1994 with a $60,239.31 deficiency. The uncontroverted facts fulfill all elements of a margin payment. Consequently, the transfer constitutes a margin payment protected against avoidance by § 546(e).

Because Farmer's margin payment theory is dispositive, the Court declines to discuss other theories advanced in Farmer's suggestions in support of summary judgment.

The record as a whole shows that no genuine issue of material fact remains and that the defendant is entitled to judgment as a matter of law. Accordingly, the Court grants summary judgment for defendant Farmer's Commodities Corporation and against plaintiff David C. Seitter on his complaint to avoid a preferential transfer.

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed. R. Bankr.P. 7052 and Fed.R.Civ.P. 52(a). A judgment reflecting this ruling shall be entered on a separate document in compliance with Fed. R. Bankr.P. 9021 and Fed. R.Civ.P. 58.

IT IS SO ORDERED.

---

15. *Kaiser Steel Corp. v. Charles Schwab & Co.,* 913 F.2d 846, 848 (10th Cir.1990).

16. *Id.* at 849.

17. *Id.* at 848–49; *Biggs v. Smith Barney, Inc. (In re David),* 193 B.R. 935, 940 (Bankr.C.D.Cal. 1996); *Blanton v. Prudential–Bache Securities, Inc. (In re Blanton),* 105 B.R. 321, 347–48 (Bankr.E.D.Va.1989).

18. *Id.* at 940.